**Donald R. LEWIS, Appellant (Respondent Below),**

**v.**

**Joseph Scott ROBERTS, Appellee (Petitioner Below).**

**No. 4–985A259.**

Court of Appeals of Indiana, Fourth District.

July 31, 1986.

James O. Wells, Jr., Rochester, for appellant.

David Paul Redding, Goshen, for appellee.

YOUNG, Presiding Judge.

Donald R. Lewis, the natural father of Erin Ranee Gordon, appeals the trial court's decision to allow Joseph Scott Roberts to adopt Erin without Lewis' consent. Roberts is married to Erin's natural mother, Doris Anne Roberts. The trial court found that Lewis' consent to the adoption was not required because he failed to support and to communicate significantly with his daughter when capable of doing so. On appeal, Lewis argues that the evidence was insufficient to establish that his consent was unnecessary.[1]

We reverse.

Erin was born out of wedlock on August 22, 1977. From 1977 until 1980, Lewis, Ms. Roberts and Erin saw each other regularly and occasionally lived together. In April of 1980, Lewis was convicted of burglary, sentenced to eight years imprisonment and incarcerated.

During the first nine months of Lewis' incarceration, Lewis wrote Erin once a week and saw her every other week when Ms. Roberts brought her to the prison. Ms. Roberts then stopped visiting Lewis. She informed him that she would not bring Erin to the prison unless Joseph Roberts accompanied her. Lewis agreed to Mr. Roberts' presence, expressing a desire to continue to see Erin. Mrs. Roberts, however, never brought Erin to the prison again and stopped answering Lewis' letters.

Ms. Roberts testified that after 1980, Lewis wrote letters two or three times a year. She also stated, however, that he sent a total of ten letters in 1982 and 1983. She said that Lewis did not write any letters in 1984 prior to his release, although Mr. Roberts testified that Lewis wrote four times.

Ms. Roberts agreed that during incarceration Lewis sent Erin cards and gifts on her birthday, Christmas and occasionally at Easter.[2] The gifts continued through 1984 when Ms. Roberts began to refuse presents from Lewis and his family.

In addition to the letters, cards and gifts, Lewis made continuing, unsuccessful attempts to see his daughter. Ms. Roberts admitted that she stopped bringing Erin to the prison to see Lewis despite his expressed desire to see his daughter and his agreement that Mr. Roberts could also come to the prison. Lewis testified that he asked Ms. Roberts to allow someone else to bring Erin for visits, but she refused. He also asked Ms. Roberts' sister for help, but she did not wish to become involved. This testimony was not contradicted.

Lewis also attempted to see Erin in October of 1983, during a two-week release from prison. He did not arrive at Ms. Roberts' home, however, until between 8:00 p.m. and 10:00 p.m. and Ms. Roberts refused to awaken Erin. Lewis did succeed

---

1. Lewis also argues that the trial court erred in granting the adoption without specifically finding that the period of non-support and non-communication lasted for one year. This allegation was not raised in his Motion to Correct Errors, however, and is therefore waived. Ind. Rules of Procedure, Trial Rule 59; *In re Marriage of Salas* (1983), Ind.App., 447 N.E.2d 1176.

2. Lewis explained that the Salvation Army provided Christmas presents which he sent home and that he asked his mother to send Erin presents on his behalf on Erin's birthday and Easter.

in visiting his daughter shortly after his release from prison in November of 1984. After that date, Ms. Roberts refused to allow Lewis to visit Erin. Lewis' paternity was not established until June of 1980, two months after his incarceration, when he and Ms. Roberts voluntarily petitioned the juvenile court. The court found that Lewis was Erin's father, but deferred an order of support until Lewis' release from prison. Shortly after his release in November of 1984, Lewis on his own initiative contacted the court and agreed to pay support of $25.00 per week. He made timely payments through the date of trial. The Petition for Adoption was filed on April 17, 1984, seven months before Lewis' release from prison.

The trial court based its judgment on IND. CODE 31–3–1–6(g) which provides:

Consent to adoption is not required of: (1) a parent or parents if the child is adjudged to have been abandoned or deserted for six (6) months or more immediately preceding the date of the filing of the petition; or a parent of a child in the custody of another person, if for a period of at least one (1) year he fails without justifiable cause to communicate significantly with the child when able to do so or knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree (when the parent or parents have made only token efforts to support or to communicate with the child, the court may declare the child abandoned by the parent or parents).

■ A petitioner seeking to terminate the rights of a natural parent under this provision must prove his case by clear, cogent and indubitable evidence. *Graham v. Starr* (1981), Ind.App., 415 N.E.2d 772. A high standard of proof is required because of the fundamental nature of the rights involved. As expressed by Judge Hunter in *In re Adoption of Bryant* (1963), 134 Ind.App. 480, 189 N.E.2d 593:

The petitioner must be prepared to prove that the living parents of the child have so violated their natural and legal obligations to the child that they come within the terms of the statute authorizing waiver of consent of the natural parents. Thus the parties should not approach the court in equal status. Courts have not hesitated to build a 'strong fortress' around the rights of natural parents to their children; for this fortress to be vulnerable to encroachment, the one seeking to sever the parent-child relationship should not only present a preponderance of proof but such proof should be established 'by clear and indubitable evidence.' (Citations omitted.)

*Id.* 189 N.E.2d at 599–600.

■ Without reweighing the evidence or judging the credibility of witnesses, we must determine whether Roberts proved by clear, cogent and indubitable evidence that Lewis failed to support or communicate with his daughter within the meaning of IC 31–3–1–6(g). The statute clearly provides that one seeking to terminate parental rights must show that a non-custodial parent failed to support his child "as required by law or judicial decree." Thus, a failure to support absent a legal requirement to do so is insufficient to establish abandonment.

In this case, Lewis was not legally required to support Erin until his paternity was established by judicial decree in June of 1980. At that time, the juvenile court decreed that Lewis was not obligated to pay support until his release from prison. Lewis was therefore neither legally required nor able to support Erin until his release from prison in November of 1984, when he began paying $25.00 per week. We conclude that there is no basis in the record supporting the trial court's conclusion that Lewis failed to support Erin as required by law when able to do so.

■ The trial court also found that Lewis failed to communicate significantly with Erin when able to do so. Under IC 31–3–1–6(g), Roberts was required to prove not only that Lewis failed to communicate, but also that he was able to do so. *In re Adoption of Anonymous* (1973), 158 Ind. App. 238, 302 N.E.2d 507. Efforts of a custodial parent to hamper or thwart com-

munication between parent and child are relevant in determining the ability to communicate. *Graham v. Star, supra; In re Adoption of Anonymous, supra.*

■ Lewis' communication with his daughter must be viewed in the context of his incarceration. Imprisonment standing alone does not establish statutory abandonment. *Matter of Adoption of Herman* (1980), Ind.App., 406 N.E.2d 277. Neither should confinement alone constitute justifiable reason for failing to maintain significant communication with one's child. *Id.* Incarceration, however, unquestionably alters the means for significant communication. *Id.* (Garrard, P.J., concurring). What constitutes insignificant communication with a free parent may be significant in relation to an incarcerated parent with limited access to his child.

■ In this case, Ms. Roberts stated that Lewis wrote Erin weekly and saw her every other week during the first nine months of his imprisonment. Thereafter, she stated that Lewis wrote two to three times a year and sent cards and gifts at Christmas, Easter and Erin's birthday. In this he persisted for four years despite Ms. Roberts' failure to answer his letters. In addition, Lewis expressed a desire to see Erin which Ms. Roberts refused to honor.

Without implying that Ms. Roberts had a duty to keep the lines of communication open between Lewis and Erin, we note the difficult position of an incarcerated father who is attempting to communicate with his small child while dealing with an uncooperative mother. In this case, Lewis' actions display a continuing interest in his daughter. In view of the constraints imposed on him by his imprisonment and by Ms. Roberts' uncooperative attitude, we cannot say that Lewis' persistence in writing his daughter, sending her cards and gifts and asking Ms. Roberts to bring Erin for visits constituted a violation of his "natural and legal obligations" to his daughter. We conclude that Roberts failed to meet his burden of proof and that the trial court

erred in granting the adoption of Erin without Lewis' consent.

Reversed.

MILLER and CONOVER, JJ., concur.