In re the Matter of the Termination of
the Parent–Child Relationship of
K.H., d.o.b. 04–07–93.

Michael PERRY, Appellant–Respondent,

v.

ELKHART OFFICE OF FAMILY AND
CHILDREN, Appellee–Petitioner.

No. 20A03–9704–JV–111.

Court of Appeals of Indiana.

Dec. 11, 1997.

Nancy A. McCaslin, McCaslin & McCaslin, Elkhart, for Appellant–Respondent.

Beverly S. Peters, Elkhart, for Appellee–Petitioner.

## OPINION

STATON, Judge.

Michael Perry appeals the involuntary termination of his parental rights. His child, almost four when his parental rights were terminated, was taken into the custody of the Elkhart Office of Family and Children when she was six months old because her parents did not adequately care for her. The only financial support Perry ever provided his daughter was to buy diapers four or five times. Perry has not seen his daughter since sometime before the welfare agency became involved, in part because the mother and her family refused him access to the child and in part because he was incarcerated for several years. At the time of the termination of his parental rights, Perry was serving a five year prison term for burglary. The child's mother voluntarily terminated her parental rights. Perry presents several issues on appeal, which we consolidate:

I. Whether the child was removed from Perry's custody under a dispositional order for the required six months.

II. Whether the evidence was sufficient to show that the conditions causing the child's removal from her parents were not remedied.

III. Whether termination of Perry's parental rights is in the child's best interest.

We affirm.

 To effect the involuntary termination of a parent-child relationship, the Elkhart Office of Family and Children must present clear and convincing evidence to establish the elements of IND.CODE § 31–35–2–4(b)(2):

(A) the child has been removed from the parent for at least six (6) months under a dispositional decree;

(B) there is a reasonable probability that:

(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

 In determining whether the evidence is sufficient to support the judgment terminating parental rights, this court neither re-weighs the evidence nor judge's the credibility of witnesses. *Egly v. Blackford County DPW*, 592 N.E.2d 1232, 1234–35 (Ind.1992). We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.* at 1235.

### I.

### *Removal for Six Months*

 Eleven months after the court issued its May 9, 1995 Dispositional Order removing the child from her parents and placing her in foster care, Perry's parental rights were ter-

minated on April 23, 1996. Perry argues that because the child was removed from the mother's custody while he was incarcerated, the child was never removed from his custody under a dispositional order. Perry also notes that paternity had not been established when the child was taken from the mother's custody.

■ Although the mother had legal custody and the father was incarcerated, the child was effectively removed from the custody of both parents when taken from the mother and placed in foster care. *Wagner v. Grant County Dept. of Public Welfare*, 653 N.E.2d 531, 533 (Ind.Ct.App.1995); *Tipton v. Marion County DPW*, 629 N.E.2d 1262, 1266 (Ind.Ct.App.1994). *But see Matter of A.M.*, 596 N.E.2d 236, 240 (Ind.Ct.App.1992), *trans. denied.* Paternity does not have to be established before commencing an action to terminate parental rights. *Matter of A.C.B.*, 598 N.E.2d 570, 572 (Ind.Ct.App.1992). Therefore, Perry's daughter was effectively removed from his custody for the statutorily mandated minimum of six months. *Wagner*, 653 N.E.2d at 533.

## II.

### Change in Conditions

■ Perry next argues that the State failed to show by sufficient evidence that the conditions causing his daughter to be placed in foster care are not likely to be remedied. Perry's daughter was placed in foster care because her parents could not provide the child with bottles, clothes, or food. Record at 77. Perry did buy diapers four or five times, but provided no other support for his daughter despite the fact that he was continuously employed before his incarceration. For over a year, Perry was employed full-time, but he failed to provided any financial support for his daughter. Furthermore, Perry has made no effort to even contact his daughter for over three years.

1. For the same reasons, we reject Perry's attacks on Findings of Fact Numbers 5 and 14, which state that based on Perry's past conduct the

■ Perry counters that he has shown responsibility while in prison, thus demonstrating the change required by I.C. 31–35–2–4(b)(2). He received his GED, tutored other inmates, enrolled in college classes, and worked at several jobs in the prison. However, the evidence of Perry's life before prison did not show an unwillingness or inability to hold a job. Rather, the evidence showed that although employed, Perry lacked sufficient concern for his daughter's well-being to support her or maintain contact with her. Perry's lack of concern has persisted while in prison, as he has made no effort to contact his daughter or seek information about her welfare. Thus there is evidence in the record from which the trial court could conclude that the conditions causing Perry's daughter to be adjudicated a Child in Need of Services would not be remedied in the future [1]. We cannot reweigh this evidence on appeal. *Egly*, 592 N.E.2d at 1232.

## III.

### Best Interests of Child

■ Perry contends that the State did not prove with sufficient evidence that he had abandoned and neglected his daughter; therefore, it was not proven that it would be in his child's best interest to terminate his parental rights. Perry argues that although he has not had any contact with his daughter since she was six months old, his absence from her life was due to the mother's refusal to let him see his daughter.

At the time of the termination of his parental rights, more than three years had passed since Perry's last contact with his then almost four year old daughter. Though the child's mother may have hampered some of Perry's initial attempts to communicate with his daughter, Perry made no effort to contact her in three years. Perry's inaction is completely opposite with that of the incarcerated father in the case he cites to support his argument, *Lewis v. Roberts*, 495 N.E.2d 810 (Ind.Ct.App.1986).

conditions causing the welfare agency to take custody of his daughter were not likely to change.

In *Lewis*, the incarcerated father called, wrote, and sent gifts. When the mother in *Lewis* thwarted these efforts and refused to allow any contact between the father and daughter, the father sought assistance from other family members while persisting in his mail campaign. In contrast, Perry never attempted to call, write, ask members of his family to inquire as to his daughter's welfare, or take any other steps to communicate with his daughter until requested by the welfare agency to voluntarily terminate his parental rights. Even then Perry did not seek to contact his daughter but only corresponded with the welfare agency regarding its request. From this evidence the trial court could conclude that Perry abandoned his daughter [2].

Other evidence also supports the trial court's decision that termination of Perry's parental rights is in the child's best interest. The guardian ad litem testified that the transitory nature of foster care adversely affects Perry's daughter and weighs against continuation of foster care while awaiting Perry's release from prison. *Matter of Campbell,* 534 N.E.2d 273, 276 (Ind.Ct.App.1989)(testimony of guardian ad litem that impermanence of foster care is detrimental to child supports finding that termination of parental rights is in the child's best interests). Too, Perry's daughter has a half-brother and the welfare agency would like to keep the brother and sister together, hoping that both will be adopted by the same family. Towards this end the voluntary termination of the parental rights of the half-brother's parents has already been secured. In light of Perry's inability to provide for his daughter, the opportunity for her to remain with her sibling supports the determination that termination of Perry's parental rights is in the child's best interest. *Tipton v. Marion County DPW,* 629 N.E.2d 1262, 1271 (Ind.Ct. App.1994) [3].

Affirmed.

HOFFMAN, J., concurs.

SULLIVAN, J., concurs in result with separate opinion.

SULLIVAN, Judge, concurring in result.

The May 9, 1995 CHINS dispositional order was premised upon the admission of the "Parent, guardian, or custodian" with regard to the allegations of the CHINS Petition.[4] It is clear that, with respect to K.H, the only parent making such admission was Christie Harris, the mother.[5] It is equally clear that Michael Perry was not a party to the CHINS proceeding, and therefore, of course, did not admit such allegations. As a matter of fact, in the termination of parental rights decree on December 10, 1996, the court specifically found that on May 9, 1995, at the time of the CHINS adjudication, "and until, May, 1996 the identity of [K.H.'s] alleged father was unknown." Record at 24.

---

2. For the same reasons, we reject Perry's challenge to Findings of Fact Numbers 8 and 10, which state that Perry had no cause justifying his failure to contact his daughter and that such neglect was irresponsible.

 Perry also challenges part of Finding of Fact Number 10 which states that Perry is a danger to his daughter's well-being because he is a convicted felon. There is no evidence supporting this portion of the finding, but there is evidence supporting the rest of the Finding of Fact No. 10. This error is harmless.

3. Perry also challenges Finding of Fact Number 6, which incorrectly states that the dispositional hearing date as May 9, 1996, when in fact it was held on May 9, 1995. This error is harmless.

4. Neither the CHINS petition nor the substance of the allegations, which, when admitted, led to the removal of K.H. from the home, are found in the record before us. We therefore do not know what those allegations were. Accordingly, we do not know what adverse conditions existed which resulted in the removal of K.H. from the home.

5. Eric Cassity, who lived with Christie Harris, was a party to the CHINS proceeding because he and Christie were the parents of a second child who, along with K.H., was the subject of the CHINS removal. It is possible, therefore, that Eric's admission as to the allegations of the CHINS petition might have constituted an admission as to the conditions within the household and be attributed to him as a "custodian" of K.H.

Perry was sentenced and was incarcerated on April 4, 1995, one month before the dispositional CHINS decree. For this reason it is clear that Perry cannot be held responsible for any of the adverse conditions which led to the removal of K.H. from the home, unless one such allegation was that K.H. was not being supported, whether by the then-unknown father, or anyone else. Again, however, we do not know what the allegations were or what the reasons for removal of the children were. We cannot assume, therefore, that Perry's nonsupport constituted one of the grounds for removal of K.H. It follows that *as to Perry*, it cannot be validly concluded that, as required by I.C. 31–6–5–4(c)(2)(A), now I.C. 31–35–2–4(b)(2)(B)(i), "the conditions *that resulted in the child's removal* ... will not be remedied." (Emphasis supplied)

I agree that *Wagner v. Grant County Dep't. Of Public Welfare* (1995) Ind.App., 653 N.E.2d 531, and *Tipton v. Marion County Dep't. Of Public Welfare* (1994) Ind.App., 629 N.E.2d 1262, stand for the proposition that, although only one parent has physical custody, removal of the child from that home and placement in a foster home constitutes effective removal from the custody of the other parent as well. This is true when, as here and as in *Wagner*, the non-custodial parent is incarcerated. Nevertheless, such principle only serves to meet the statutory requirement of I.C. 31–6–5–4(c)(1), now I.C. 31–35–2–4(b)(2)(A), that the child must have been removed from the parent for at least six months. It does not bear upon whether or not the parent in question caused or contributed to the adverse conditions in the environment or whether those conditions are likely, or not, to be remedied by him. *Tipton v. Marion County D.P.W., supra.*

To be sure, the evidence at the termination hearing reflected that prior to the CHINS removal there were times when food, diapers and bottles were needed and Christie did not have the necessary funds. Perry could have provided such by way of support because he was employed full-time making $240 per week, but again we do not know whether this factor was a stated reason for the removal of K.H. from the mother's home.

Be that as it may, the order terminating Perry's parental rights may be validly premised upon the trial court's specific finding that:

"10. Michael is incarcerated and will be until at least May 18, 1997. Michael has never provided a home for Kelly, never paid any support, cannot provide a home now, has no relationship with Kelly, and placement with him in the future *poses a threat to the well-being of [K.H.]* because he was an irresponsible parent to her and is a convicted felon." (Emphasis supplied.) Record at 95.

This finding, taken in the context of all the other evidence, demonstrates that the statutory requirement of I.C. 31–6–5–4(c)(2)(B), now I.C. 31–35–2–4(b)(2)(B)(ii), has been met, as an alternative to the basis supplied by the provision relating to the likelihood that the conditions resulting in the removal of the child will not be remedied. Because continuance of Perry's relationship, or lack thereof, poses a threat to the well-being of the child, the trial court's judgment was appropriate.

I therefore concur in the affirmance of the judgment.