**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**BENJAMIN D. R. VANDERPOOL**
Vanderpool Law Firm, P.C.
Warsaw, Indiana

ATTORNEY FOR APPELLEES:

**JOEL K. STEIN**
Lynn and Stein, P.C.
Wabash, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| In the Matter of the Adoption of H.S. and D.S., | ) | |
| | ) | |
| R.S., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 85A02-1311-AD-996 |
| | ) | |
| V.C. and M.C., | ) | |
| and D.S. and S.S., | ) | |
| | ) | |
| Appellees-Petitioners. | ) | |

APPEAL FROM THE WABASH CIRCUIT COURT
The Honorable Robert R. McCallen, III, Judge
Cause No. 85C01-1306-AD-18 & -19

**June 9, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

R.S. ("Father") appeals the trial court's order granting petitions to adopt H.S. and D.S. (together, "the Children") by V.C. and M.C. and D.Sa. and S.Sa. (together, "the Adoptive Parents"), respectively. Father raises the following restated issues for our review:

I.      Whether the trial court erred when it concluded that Father's consent to the adoption was not required because of his failure to communicate with and failure to support the Children; and

II.     Whether the trial court erred when it concluded that the adoption of the Children by the Adoptive Parents was in the best interests of the Children.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Father is the biological father of two children, H.S., born July 21, 2006, and D.S., born September 15, 2007. B.S. ("Mother"), the biological mother of the Children, had custody of the Children during a portion of their infancy. After Mother experienced issues caring for the Children, she turned the custody of the Children over to two separate married couples. M.C. and V.C. assumed custody of H.S. in April 2009, when H.S. was almost three years old. D.Sa. and S.Sa. assumed custody of D.S. in December 2009, when he was two years old.

Between July 31, 2010 and October 10, 2010, Father had supervised visitation with the Children that occurred every other Sunday for a two-hour period. During that time period, Father exercised his visitation on five occasions. The fifth and final visitation was on October 10, 2010. On October 16, 2010, Father was arrested and had remained incarcerated since that time in either county jails or the Department of Correction.

2

On August 4, 2010, the Adoptive Parents filed their respective petitions for legal custody of the Children. The Adoptive Parents asked for and received the consent of both Mother and Father to the formal custody arrangement. Father signed his consent to custody while incarcerated in the Jay County Jail awaiting the disposition of charges in that county. On February 21, 2011, the order granting custody of the Children to the Adoptive Parents was issued. On January 21, 2013, prior to filing the petitions for adoption, legal counsel for the Adoptive Parents sent correspondence to Father in prison requesting his consent to the adoptions of the Children by the Adoptive Parents. Father subsequently wrote to the trial court and counsel for the Adoptive Parents to notify them that he was not willing to consent to the adoptions.

D.S. last saw Father on October 10, 2010. On April 9, 2013, D.Sa. and S.Sa., who had custody of D.S., received a letter from Father objecting to the adoption. No other communication was received by D.Sa. and S.Sa. from Father until after the petition for adoption was filed. H.S. last saw Father on October 10, 2010. V.C. and M.C. received mail from Father on January 10, 2011, April 21, 2011, and August 25, 2011. The first two were intended for V.C. and M.C., and the third was a letter intended for Father's aunt but was misaddressed. V.C. responded to the April 21 letter on April 24, 2011 and included a self-addressed, stamped envelope that he could use to write H.S. The next time that Father contacted V.C. and M.C. was when he sent them a card on May 22, 2013. No other communication was received by V.C. and M.C. from Father until after the petition for adoption was filed.

On June 28, 2013, the Adoptive Parents filed their respective petitions for adoption. Mother consented to the adoptions, and her consent was filed with the trial court on July 3, 2013. Father wrote a second letter to the trial court objecting to the adoptions. After the petitions for adoption were filed, Father wrote a letter to D.Sa. and S.Sa., which they received on August 14, 2013. D.Sa. responded to that letter, and Father wrote another letter to them, which was received on September 11, 2013. Additionally, after the adoption petitions were filed, Father wrote a letter to V.C. and M.C., which they received on September 14, 2013.

When D.Sa. and S.Sa. assumed custody of D.S., they provided Father with their home address and phone number. Since that time, their phone number has not changed, and they have not moved from the address provided to Father. Likewise, when V.C. and M.C. assumed custody of H.S., they provided Father with their phone number and current address. Since that time, their phone number did not change; they did move to a new address in the Fall of 2012, but their adult son moved into the old home and hand delivered any mail received for them at the former address. Father's family members have contact information for the Adoptive Parents and have been in contact with the Adoptive Parents both before and after the adoption petitions were filed. While incarcerated, Father kept in contact with his family members by phone and letter.

D.S. calls S.Sa. "Dad" as S.Sa is the only dad he has ever known, and D.S. had no memory of Father. When H.S. came to live with V.C. and M.C., she was in poor emotional condition. She was self-mutilating, would bite herself, beat her head against the wall or floor, pull her caregivers' hair, kick and scream, and growl like a wild animal. V.C. and

4

Mother sought mental health treatment for H.S. in January 2010, and she was diagnosed with Reactive Attachment Disorder and Post Traumatic Stress Disorder. She needed and received treatment at a treatment facility, home, and had to have a counselor accompany her to school. After the treatment, H.S.'s demeanor has changed drastically, and at the time of the adoption hearing, she was happy, kind, loving, and playful. The two times that Father visited H.S. at the home of V.C. and M.C. she did not recognize him as her father, and her emotional condition regressed after the visits.

After the hearing on November 1, 2013, the trial court issued an order finding that Father's consent to adopt was not required because he had failed without justifiable cause to communicate significantly with the Children when able to do so. The trial court set the case for a hearing on November 8, 2013 to determine whether adoption was in the Children's best interests. At that hearing, the trial court took judicial notice of the testimony and evidence from the November 1 hearing. Although Father did not attend the November 8 hearing, his attorney was present. The Adoptive Parents testified at the hearing regarding their desire to adopt the Children. At the conclusion of the hearing, the trial court granted the Adoptive Parents' petitions to adopt the Children. Father now appeals.

## DISCUSSION AND DECISION

When reviewing a trial court's ruling in an adoption case, the appellant bears the burden of overcoming the presumption that the trial court's decision is correct. *In re Adoption of S.W.*, 979 N.E.2d 633, 639 (Ind. Ct. App. 2012) (citing *In re Adoption of A.S.*, 912 N.E.2d 840, 851 (Ind. Ct. App. 2009), *trans. denied*). We will neither reweigh the

5

evidence nor judge the credibility of witnesses; instead, we will consider the evidence most favorable to the trial court's decision, and the reasonable inferences to be drawn therefrom, to determine whether sufficient evidence exists to sustain the decision. *Id.* We will not disturb the trial court's ruling unless the evidence leads to only one conclusion and the probate court reached an opposite conclusion. *Id.*

## I. Whether Father's Consent Was Required

Father argues that the trial court erred in granting the petitions to adopt the Children and determining that his consent to the adoption was not required. He contends that the Adoptive Parents failed to meet their burden of proof to show that he failed, without justifiable cause, to communicate significantly with the Children when he was able to. Father asserts that he was incarcerated during the relevant time periods at issue and that he did the best he could to communicate with the Children considering his circumstances of incarceration, which limited his means of communication. He claims that he periodically wrote letters to the Children and sent them Christian magazines. Father also alleges that the Adoptive Parents hampered his efforts at communication by moving and not providing him with their address and not responding to the letters he sent.

Parental consent is generally required to adopt a child in Indiana. Ind. Code § 31-9-9-1. However, consent to adoption is not required from any of the following:

> (2)　A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
> > (A)　fails without justifiable cause to communicate significantly with the child when able to do so . . . .

6

Ind. Code § 31-19-9-8(a)(2)(A). This court has held that the purpose of this statutory provision is to "'foster and maintain communication between non-custodial parents and their children, not to provide a means for parents to maintain just enough contact to thwart potential adoptive parents' efforts to provide a settled environment to the child.'" *In re Adoption of S.W.*, 979 N.E.2d at 640 (quoting *In re Adoption of J.P.*, 713 N.E.2d 873, 876 (Ind. Ct. App. 1999)).

Here, Father last saw D.S. on October 10, 2010, when he had his final supervised visitation before he became incarcerated. The next contact Father had with D.S. was on April 9, 2013, when he sent D.S. a letter. Therefore, there was a thirty-month period where Father had no communication at all with D.S. Father last saw H.S. on October 10, 2010 and sent her two letters on January 10, 2011 and on April 21, 2011. He next made contact with H.S. on May 22, 2013, when he sent her a note. Therefore, there was a twenty-five-month period where Father had no communication with H.S. These two periods of no communication greatly exceed the statutory requirement of one year of no significant communication.

Father contends that, considering his circumstances of incarceration, he did his best to communicate with the Children. We disagree. Father is correct in stating that "[w]hat constitutes insignificant communication with a free parent may be significant in relation to an incarcerated parent with limited access to his child." *Lewis v. Roberts*, 495 N.E.2d 810, 813 (Ind. Ct. App. 1986). However, confinement alone should not constitute justifiable reason for failing to maintain significant communication with one's child. *Id.* Although Father's incarceration impacted how he could communicate with the Children, it did not

7

make him completely unable to communicate with them. Here, the evidence showed that Father did not have *any* communication with the Children for a time period in excess of two years.

Father also claims that the Adoptive Parents interfered with his ability to communicate with the Children. "Efforts of a custodial parent to hamper or thwart communication between parent and child are relevant in determining the ability to communicate." *Id.* at 812-13. Although Father contends that one set of the Adoptive Parents moved without providing him with their new address, the testimony showed that Father was provided with an address and phone number for D.Sa. and S.Sa., and their phone number and address have not changed since they gave them to Father. Likewise, when V.C. and M.C. assumed custody of H.S., they provided Father with their phone number and current address, and since that time, their phone number has not changed. They did move to a new address in the Fall of 2012, but their adult son moved into the old home and hand delivered any mail received for them at the former address. Additionally, Father's family members had contact information for the Adoptive Parents and have been in contact with the Adoptive Parents both before and after the adoption petitions were filed.

Given the evidence presented, we cannot say that the trial court clearly erred in finding that Father failed to communicate significantly with the Children for a period of over one year even though he was able to do so. This was sufficient to establish that Father's consent was not required. Father's arguments on appeal are essentially a request to reweigh the evidence, which we cannot do. *In re Adoption of S.W.*, 979 N.E.2d at 639.

## II. Best Interests of the Children

Father contends that the trial court erred in proceeding with the adoption when there was no evidence at a separate hearing to show that the adoption was in the best interests of the Children. He asserts that during both hearings held by the trial court, the Adoptive Parents failed to present evidence as to whether or not the adoption was in the best interests of the Children. Father argues that the first hearing was held to determine whether his consent was required for the adoption, and the second hearing was held to determine if adoption was in the best interests of the Children and that it was improper for the trial court to rely on any evidence presented at the first hearing. He alternatively posits that he presented sufficient evidence to rebut any testimony of the Adoptive Parents that the adoption was in the best interests of the Children.

A petition for adoption is not automatically granted following a showing that a natural parent failed to communicate significantly with the child for a period of at least one year when able to do so. Once the statutory requirements are met, the court may then look to the arrangement which will be in the best interest of the child. *In re Adoption of N.W.*, 933 N.E.2d 909, 914 (Ind. Ct. App. 2010). The purpose of Indiana's adoption statutes is to protect and promote the welfare of children by providing them with stable family units. *Id.* (citing *In re Adoption of D.C.*, 928 N.E.2d 602, 607 (Ind. Ct. App. 2010), *trans. denied*). In evaluating the parent-child relationship, the best interest of the child is paramount, and our main concern should lie with the effect of the adoption on the reality of the minor child's life. *Id.* at 915.

In the present case, at the beginning of the hearing on November 8, 2013, the Adoptive Parents asked the trial court to take judicial notice of the testimony from the hearing on November 1, 2013. The trial court agreed to take judicial notice "of the testimony presented at that proceeding, as well, with respect to the best interest." *Tr*. at 82. Father's attorney did not object to this. Therefore, to the extent that Father is arguing that the trial court erred in doing this, he has waived this claim. *Godby v. State*, 949 N.E.2d 416, 420 (Ind. Ct. App. 2011), *trans. denied*.

By taking judicial notice of the testimony from the November 1 hearing, there was sufficient evidence to support the trial court's finding that the adoptions were in the best interests of the Children. The evidence showed that the Adoptive Parents have cared for and loved these children for many years. They have provided the only stable homes that the Children have ever known. The Children are familiar with their surroundings and have bonded with the Adoptive Parents and members of their families. D.S. has no memory of Father, and D.Sa. and S.Sa. and their family are the only family unit he has ever known. When H.S. came to live with V.C. and M.C., she had severe emotional and psychological issues and had lived in fifteen different places before she was two years old. After undergoing counseling, and through the love and support of V.C. and M.C., H.S. had

become happy, loving, and kind.  We conclude that the evidence presented supported the

trial court's determination that adoption was in the Children's best interests.[1]

Affirmed.

MAY, J., and BAILEY, J., concur.

---

[1] Father contends that he relied on a statement by the trial court that consent would be the only issue to be determined during the first hearing on November 1, 2013 and, therefore, did not have the opportunity to provide all of his evidence as to why it was in the Children's best interests not to complete the adoption. However, the evidence shows that Father did present evidence at the November 1 hearing about, among other things, how he loved his children dearly, that once he got out of prison he was planning on attending college and starting his own business, that he hoped to be in their lives as much as possible, that he had received his G.E.D., and that he was involved in programs to teach him life skills and help with anger management. *Tr.* at 68-69.  Father did not attend the hearing on November 8, 2013, and no evidence was offered on his behalf regarding whether adoption was in the Children's best interests.