## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 14 2016, 9:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Matthew J. Elkin | Craig A. Dechert |
| Deputy Public Defender | Kokomo, Indiana |
| Kokomo, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| G.S., | September 14, 2016 |
| *Appellant-Respondent,* | Court of Appeals Case No. 34A04-1601-AD-140 |
| v. | Appeal from the Howard Circuit Court |
| T.K., | The Honorable Lynn Murray, Judge |
| *Appellee-Petitioner.* | Trial Court Cause No. 34C01-1501-AD-3 |

**Vaidik, Chief Judge.**

# Case Summary

G.S. appeals the trial court's grant of T.K.'s petition to adopt G.S.'s son.  We reject all of G.S.'s arguments except one: the trial court erred by accepting a limited criminal-history check for T.K. rather than ordering the complete criminal-history report required by Indiana Code section 31-19-8-5(d).  We vacate and remand to the trial court for reconsideration in light of a complete background check.

# Facts and Procedural Summary

C.K. (Mother) and G.S. were married and have one son, T.S. (Child), born December 22, 2008.  The couple divorced in 2011, and Mother was awarded custody of Child.  G.S. was granted supervised parenting time and ordered to pay child support.

G.S. initially maintained his parenting time with Child every other weekend, but he did not pay the ordered child support.[1]  In November 2012, Mother married T.K.  T.K became the sole financial support for Mother and Child and a primary caregiver for Child.  Around the same time, the visits between G.S. and Child stopped.  There was only one visit after November 2012—G.S. went to Child's t-ball game in spring 2013 and spoke with Child at the game.  In March 2014, G.S. was incarcerated, serving sentences for, among other crimes,

---

[1] G.S. did pay some child support in the summer of 2015, six months after the adoption petition was filed.

possession of methamphetamine and auto theft. His only communication with Child during his incarceration was "five or six" cards or letters he sent for Child's birthday, Christmas (which is three days after Child's birthday), and "a few in between." Tr. p. 24.

[4] On January 22, 2015, T.K. filed a petition to adopt Child. The petition included the following statement:

> That [G.S.] is the natural father of [Child] and his consent should not be necessary due to him having no contact with the child since April of 2013 and providing no support for the minor child for the past year.

Appellant's App. p. 32. A summons and a copy of the petition were sent to G.S. However, T.K. did not tender the Notice to Named Father form to the trial court until three weeks later, and the notice T.K. tendered for service on G.S. did not comply with the section of the Indiana Code to be used for adoption petitions where it is being argued that consent is not required. Nevertheless, on February 12, 2015, G.S. requested a continuance until he completed his incarceration in Hendricks and Marion Counties, and on March 16, G.S. filed a motion to contest the adoption. The trial court appointed counsel for G.S. in April and held a hearing on the adoption petition on November 24, 2015.

[5] At the hearing, G.S.'s counsel argued that the petition should be dismissed because, in addition to the issue with the Notice to Named Father, the petition itself did not contain Child's gender or race; the trial court failed to return the

petition to T.K. within five days to add the omitted gender and race; T.K. failed to submit proof with the adoption petition that certain fees due to the State were paid; the required medical-history report was filed five months after the statutory deadline and was incomplete; and the criminal-history report T.K. offered into evidence at trial was prepared by the Howard County Sheriff and did not contain the state or national components of the criminal history report required for adoption. The trial court reserved ruling on G.S.'s requests to dismiss the petition. After the hearing, T.K. submitted a Limited Criminal History prepared by the Indiana State Police declaring that a search of Indiana records indicated T.K. had no criminal history. The trial court ultimately found all of these defects harmless.

[6] The trial court issued its order granting T.K.'s petition to adopt, including findings and conclusions, in late December 2015. Relevant to this appeal, the trial court concluded that G.S.'s consent was not required because he "did not provide any financial support for [Child]" for more than one year despite there being times when G.S. was employed and could have provided some financial support, and that "[G.S.] has failed without justifiable cause to communicate significantly with [Child] for a period of at least one (1) year." Appellant's App. p. 17-18. The trial court also concluded that "[Child's] best interests are served by granting [T.K.'s] petition to adopt him." *Id.* at 19.

[7] G.S. now appeals.

# Discussion and Decision

[8] G.S. contends that the trial court erred in granting T.K.'s petition to adopt Child because (1) the evidence was insufficient to support the trial court's conclusions that his consent was not required and the adoption was in Child's best interests and (2) T.K. failed to comply with certain statutory requirements. When reviewing the trial court's ruling in an adoption proceeding, we presume the trial court's decision is correct, and we will not disturb the ruling unless the evidence, considered in the light most favorable to the decision, leads to but one conclusion and the trial judge reached an opposite conclusion. *In re Adoption of T.L.*, 4 N.E.3d 658, 662 (Ind. 2014).

[9] When, as in this case, the trial court has made findings of fact and conclusions of law, we first determine whether the evidence supports the contested findings and, second, whether the findings support the judgment. *Id.* We will not set aside the findings or judgment unless clearly erroneous. Ind. Trial Rule 52. Factual findings are clearly erroneous if the record lacks any evidence or reasonable inferences to support them, and a judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings. *T.L.*, 4 N.E.3d at 662.

# I. Insufficient Evidence

[10] G.S. argues that the evidence is insufficient to support the trial court's conclusions that his consent to the adoption is not necessary and that the adoption is in Child's best interests.

# A. Consent

Generally, a trial court cannot grant an adoption without the consent of the child's parents. *See* Ind. Code § 31-19-9-1. However, Indiana Code section 31-19-9-8(a)(2) provides that a non-custodial parent's consent is not required "if for a period of at least one (1) year the parent: (A) fails without justifiable cause to communicate significantly with the child when able to do so; or (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree."

Here, the trial court found that both of these statutory provisions applied to G.S., but in this appeal, G.S. challenges only the trial court's findings with respect to communication. The statute is written in the disjunctive such that the existence of either one of the circumstances provides sufficient ground to dispense with consent. *In re Adoption of O.R.*, 16 N.E.3d 965, 973 (Ind. 2014). Because G.S. makes no argument that the trial court's findings and conclusions are clearly erroneous with regard to his failure to provide financial support for Child, even if the trial court's findings and conclusions with regard to G.S.'s failure to significantly communicate were clearly erroneous, we would not reverse the judgment of the trial court. *In re Adoption of S.W.*, 979 N.E.2d 633, 642 n.5 (Ind. Ct. App. 2012).

Nevertheless, we will address G.S.'s argument with respect to communication. G.S. argues that he had some communication with Child—he attended a t-ball game in 2013 and he sent a handful of cards after he was incarcerated in 2014. We have long held that the purpose of Indiana Code section 31-19-9-8(a)(2)(A)

is to "foster and maintain communication between non-custodial parents and their children, not to provide a means for parents to maintain just enough contact to thwart potential adoptive parents' efforts to provide a settled environment to the child." *In re Adoption of S.W.*, 979 N.E.2d at 640. Therefore, T.K. "[was] not required to prove that [G.S.] had *no* communication with [Child,]" but rather that the communication G.S. had with Child was not significant. *Id.* Attending a sporting event and sending a few cards over the course of three years, in the context of a parent-child relationship, is minimal communication. The trial court reasonably concluded from these facts that G.S. failed to significantly communicate for at least one year.

[14] However, the statute also requires that the failure to significantly communicate be unjustifiable, and G.S. asserts that he "can be said to have justifiably failed" to communicate with his son because he was incarcerated and he is a drug addict.[2] Appellant's Br. p. 17. G.S. is correct that his communication with Child after being incarcerated in March 2014 must be viewed in the context of that incarceration and the attendant limitations on his ability to communicate with Child. *See Lewis v. Roberts*, 495 N.E.2d 810, 813 (Ind. Ct. App. 1986).

---

[2] G.S. also argues that Mother did not give adequate notice of a change in address and phone number, and that "[Mother] said she was not inclined to drive [Child] to see G.S." Appellant's Br. p. 17. However, the trial court found that Mother did not know how to reach G.S. when she moved and that Mother notified G.S.'s mother, with whom G.S. sometimes lived, of the changes. Additionally, G.S. in fact contacted Mother after her contact information changed. Because G.S. makes no argument that there was an attempt to contact Child that was thwarted because he did not have valid contact information, or that Mother was obligated to be the person who supplied transportation for his visitation, we do not need to address this argument further.

However, even before his incarceration, G.S. failed to communicate with Child for sixteen months from November 2012 through March 2014, with the exception of attending one t-ball game. While we understand that G.S. is an addict and that may have hindered his ability to communicate, difficult times do not constitute justifiable cause for failing to maintain significant communication with one's child. *In re Adoption of T.H.*, 677 N.E.2d 605, 607 (Ind. Ct. App. 1997). There is sufficient evidence to establish that G.S. unjustifiably failed to significantly communicate with Child for at least one year. G.S. has failed to persuade us that the evidence regarding communication "leads to but one conclusion and the trial judge reached an opposite conclusion." *In re Adoption of T.L.*, 4 N.E.3d at 662.

## B. Best Interests of the Child

[15] G.S. also asserts that there was insufficient evidence to support the trial court's conclusion that adoption is in Child's best interests. In determining the best interests of a child in an adoption proceeding, we have noted that there are strong similarities between the adoption statute and the termination-of-parental-rights statute. *In re Adoption of M.S.*, 10 N.E.3d 1272, 1281 (Ind. Ct. App. 2014). In termination-of-parental-rights cases, the trial court looks to the totality of the evidence to determine the best interests of a child. *Id.* Relevant factors include a parent's historical and current inability to provide a suitable environment for the child, *In re J.C.*, 994 N.E.2d 278, 290 (Ind. Ct. App. 2013), and the child's need for permanence and stability, *see A.J. v. Marion Cnty. Office of Family and Children*, 881 N.E.2d 706, 718 (Ind. Ct. App. 2008), *trans. denied*.

[16]  G.S. argues that there is "no testimony in the record regarding the impact of the adoption on [Child]" except for his own testimony that Child would feel abandoned if he "lost" his biological father. Appellant's Br. p. 18. Therefore, G.S. concludes, the trial court erred in deciding that adoption was in Child's best interests. We cannot agree. G.S. also testified that he has been incarcerated for the past two years, that he has no prospective employment for when he is released, that he has no stable housing of his own and intends to return to his mother's house, and that G.S. was periodically homeless when he was using drugs during the year before his incarceration. G.S. has a history of drug abuse and criminality that has kept him from providing a stable environment for his child, and the trial court could reasonably infer that this pattern will continue.

[17]  In contrast, T.K. provided financial support and participated in Child's daily life as a step-parent for the three years preceding the adoption hearing. In light of the above factors, and based on the record as it stands now, the trial court's conclusion that adoption was in Child's best interests was not clearly erroneous.[3]

---

[3] This is, of course, subject to change depending on the findings, if any, of the complete background check discussed below.

## II. Strict Procedural Compliance

[18] G.S. also argues that T.K. failed to comply with certain provisions of the adoption statute and, therefore, the trial court should have dismissed the petition. In some circumstances, it is possible that procedural irregularities in family-law proceedings may be of such significance that they deprive a parent of procedural due process when terminating his or her parental rights. *A.P. v. Porter Cnty. Office of Family & Children*, 734 N.E.2d 1107, 1112-13 (Ind. Ct. App. 2000), *trans. denied*. In general, the adoption statute is to be strictly construed and followed. *See In re Adoption of A.M.*, 930 N.E.2d 613, 620 (Ind. Ct. App. 2010). But it is not to be so strictly construed as to defeat the statute's purposes. *Id.* The Court "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Ind. Trial Rule 61. Therefore, we will not reverse for harmless errors. *See id.*

[19] First, G.S. complains that he did not receive adequate notice of the proposed adoption. He notes that the original petition did not list Child's sex, race, or how long Child had lived with T.K.; the Notice to Named Father did not contain the reasons why T.K. would argue G.S.'s consent was not required; and G.S. maintains that he did not initially receive the Notice to Named Father.[4]

---

[4] The adoption statute provides more than one form for notice to the parent whose rights will be terminated if the adoption petition is granted. Here, T.K. tendered a Notice to Named Father that complies with Indiana Code section 31-19-4-5. But because T.K. was arguing that G.S.'s consent was not required, the proper form is a Notice of Adoption described in Indiana Code section 31-19-4.5-3. However, this does not affect our conclusion that sufficient notice was given in this case.

[20] It is well settled that substantial compliance with the notice provision "will be sufficient if the party receives notice which achieves that purpose for which the statute was intended." *In re Adoption of J.T.A.*, 988 N.E.2d 1250, 1257 (Ind. Ct. App. 2013) (quoting *Matter of Paternity of Baby Girl*, 661 N.E.2d 873, 877 (Ind. Ct. App. 1996)), *trans. denied*. Here, G.S. knew from the adoption petition that T.K. was seeking to adopt Child, and the petition made clear that T.K. intended to argue G.S.'s consent was not required because of a lack of significant communication and failure to pay child support. G.S. was able to contest the adoption in court, with counsel. While the petition to adopt and Notice to Named Father did not strictly comply with the statute, and G.S. contends he did not initially receive the Notice to Named Father, these defects did not cause G.S. to be deprived of due process; notice was, therefore, sufficient.

[21] G.S. next complains that T.K. failed to satisfy Indiana Code section 31-19-2-7, which requires a medical report to be submitted within sixty days of filing the petition to adopt. In this case, the report was not submitted until seven months after the adoption petition was filed, and G.S. notes that it does not contain information regarding his own medical history, or Child's size and APGAR score at birth. However, G.S. does not argue that timely submission or the missing information would have changed the outcome in this case. Any error was therefore harmless.

[22] Next, Section 31-19-2-8 requires that an adoption-history fee and putative-father-registry fee be attached to the petition for adoption. T.K. did not submit

proof of payment for these two fees until December 2015, after the adoption hearing. Appellant's App. p. 99-101. We agree that these fees should have been paid according to the deadlines in the statute; however, G.S. offers no explanation of how the error affected his rights, and we see no reason to remand simply to have the trial court say that the requirements are now met.

[23] Finally, G.S. complains that the trial court did not order the complete criminal-history report required by Indiana Code section 31-19-8-5(d).[5] Instead, the trial court accepted the Limited Criminal History prepared by the Indiana State Police and submitted after the hearing. Among other issues, the State Police report does not satisfy the requirements for national database searches in Indiana Code section 31-9-2-22.5. According to Indiana Code section 31-19-2-7.3, "[a] court may not waive any criminal history check requirements . . . ." For the protection of the child, we recently decided that the absence of a statutorily compliant background check "renders an adoption petition fatally deficient." *See In re Adoption of S.O.*, No. 41A01-1510-AD-1781, 2016 WL 3421219 (Ind. Ct. App. June 22, 2016).

---

[5] Section 31-19-8-5(d) requires the trial court to order either the county office of family and children or a child placement agency to prepare a criminal-history report. There are five components to the report that are listed in Indiana Code section 31-9-2-22.5, which we summarize: (1) a state police department fingerprint-based or name-based criminal history check of both national and state databases; (2) a check for substantiated reports of child abuse or neglect in jurisdictions where a person lived within the previous five years; (3) a search of the United States Department of Health and Human Services' national registry of substantiated cases of child abuse or neglect; (4) a search of the national sex offender registry maintained by the United States Department of Justice; and (5) a check of local law enforcement agency records in every jurisdiction where a person has lived within the previous five years.

[24] Here, the trial court relied on the limited background check that T.K. submitted after the adoption hearing. That is not sufficient. Therefore, we must remand to the trial court to order a background check that fully complies with Indiana Code section 31-19-8-5(d) and to reconsider the best interests of the child should the background check reveal that T.K. has a criminal history.

[25] Vacated and remanded.

Baker, J., and Najam, J., concur.